DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas, in which the trial court granted summary judgment in favor of appellee, Progressive Ins. Co. ("Progressive"), and dismissed appellant's complaint and cross-motion for summary judgment.
 {¶ 2} On appeal appellant, Mushin Ozbay, sets forth the following nine assignments of error:
 {¶ 3} "Assignment of error no. 1
 {¶ 4} "Statements on an application for insurance are statements of current facts. They are not warranties of future facts or conduct.
 {¶ 5} "Assignment of error no. 2
 {¶ 6} "Appellant had no duty to list on the application facts that were unknown to him at the time of the application. Further, he had no duty to report every change of circumstances.
 {¶ 7} "Assignment of error no. 3
 {¶ 8} "An insurance company cannot declare an insurance policy voice [sic] because of misrepresentations unless such misrepresentations were material to the risk.
 {¶ 9} "Assignment of error no. 4
 {¶ 10} "Progressive Insurance is estopped from attempting to avoid its responsibility under the insurance policy on the basis that the driver at the time of the crash was not listed on the application for insurance.
 {¶ 11} "Assignment of error no. 5
 {¶ 12} "Progressive cannot void the insurance policy ab initio unless it can prove that it would not have issued the policy if it had known that someone other than the drivers listed on the application [as] insured would be driving the vehicle.
 {¶ 13} "Assignment of error no. 6
 {¶ 14} "The defense of a driver not named on the application for insurance was never plead [sic] by Progressive and accordingly it was waived. Accordingly, the trial court erroneously considered such alleged defense.
 {¶ 15} "Assignment of error no. 7
 {¶ 16} "Progressive Insurance is not entitled to summary judgment because of any increase in risk or premium because the truck was operating in New Jersey or because of a change of drivers. The insurance policy in question specifically provides that in such circumstances Progressive has the right to retro-actively adjust the premium either up or down.
 {¶ 17} "Assignment of error no. 8
 {¶ 18} "The trial court erred when it granted summary judgment to defendant Progressive.
 {¶ 19} "Assignment of error no. 9
 {¶ 20} "The trial court erred when it did not grant plaintiff's motion for summary judgment."
 {¶ 21} Appellant is a naturalized American citizen of Turkish descent. After coming to the United States in the 1980s, appellant lived in New York and, later, in New Jersey. In 1995, appellant moved himself and his wife to Perrysburg, Ohio, where, at all times relevant to this case, he worked as the owner/ operator of several commercial hauling vehicles.
 {¶ 22} In June 1997, appellant contacted an insurance agent, David Modene, about obtaining an insurance policy for a 1996 Volvo dump truck that he was about to purchase from LJL Truck Center in Augusta, Georgia. On June 5, 1997, appellant went to Modene's office in Perrysburg, where he filled out an application for insurance coverage to be issued by appellee, Progressive.
 {¶ 23} At the time the application was filled out, appellant did not effectively read or write English. Accordingly, appellant supplied verbal answers to questions asked by Modene, who then entered the information into a computer to be sent electronically to Progressive. On the application, appellant listed his business and home addresses as 26793 Lake Vue Drive, Apt. 8, Perrysburg, Ohio, and gave the business name as "Mushin Ozbay, d.b.a. Ozbay Trucking." Appellant listed his "business type" as "dirt, sand, gravel and asphalt hauler," and stated that the dump truck would be used for hauling jobs within a 50 mile radius of Perrysburg. Appellant listed himself as the driver of the truck.
 {¶ 24} After obtaining the above information from appellant, Modene quoted appellant an annual insurance premium of $4,799. The effective date of the policy ("policy number 45931300") was June 6, 1997.
 {¶ 25} After obtaining insurance coverage, appellant went to Georgia and purchased the dump truck. He then drove the truck back to Perrysburg with a license plate given to him by the dealer in Georgia. Appellant attempted to obtain work for the dump truck in the Toledo area; however, he was unable to obtain sufficient work to pay for the truck. By September 1997, appellant had moved the dump truck to New Jersey, where he was able to secure hauling jobs for the truck.
 {¶ 26} On October 13, 1997, the dump truck was involved in a roll over accident on the New Jersey Turnpike, and was totally destroyed. At the time of the accident the dump truck, which by then displayed a New Jersey license plate, was being driven by appellant's employee, Cafer Dincer. The loss was reported to Thomas Humphries, a Progressive claims representative in Iselin, New Jersey, and an investigation was performed by Progressive. On December 17, 1997, Humphries sent appellant a letter which stated, in relevant part:
 {¶ 27} "Our investigation reveals that you were garaging and operating your vehicle at a location other than the one disclosed in your application. At the time of application you did not disclose to the agent at Modene Insurance Agency that your vehicle would be garaged in Trenton, NJ. Therefore, the garaging/operation of your vehicle at the undisclosed garaging site is a misrepresentation of material fact that affected our risk and the acceptance of the risk.
 {¶ 28} "Due to the facts listed above, Progressive Companies is rescinding the policy number 04593130-0 making the contract null and void back to the application contract date. * * *"
 {¶ 29} On February 2, 2001, appellant filed a complaint against Progressive in the Wood County Court of Common Pleas,[1] in which he alleged that Progressive breached its duty of good faith and fair dealing by attempting to void the insurance policy ab initio, refusing to pay for his losses due to the accident, and failing to defend and indemnify him in a related personal injury lawsuit filed against appellant in New Jersey by Cafer Dincer. On the same day, an answer was filed, in which Progressive asserted that appellant was estopped from bringing this action because he misrepresented facts on the application for insurance that were material to the risk incurred by Progressive, thereby voiding the policy from its inception.
 {¶ 30} On September 14, 2001, Progressive filed a motion for summary judgment and a memorandum in support thereof, in which it asserted that the policy was void as a matter of law because appellant initially misrepresented to Modene that he intended to use the dump truck within 50 miles of Perrysburg, as evidenced by the fact that, within weeks of purchasing the truck, appellant had moved the dump truck to New Jersey and began using it in that state. In support of its motion, Progressive relied on portions of its commercial auto policy form 1050, which states that the policy is issued based on the "warranties and representations" made by appellant in the application. Progressive also relied on Part IV — General Provisions, paragraph 10, of the policy, and appellant's application for insurance, which states:
 {¶ 31} "10. Fraud and Misrepresentation
 {¶ 32} "This policy shall be void if you or an insured has concealed or misrepresented any material fact, or in case of any fraud or attempted fraud touching any matter regarding this Policy, whether before or after a loss or accident."
 {¶ 33} In addition to the above, Progressive relied on the deposition testimony of appellant, David Modene, Progressive's commercial underwriter Sandra Craine, and Cafer Dincer. Appellant stated in his deposition testimony that he told Modene he would be operating the dump truck within a 50 to 60 mile radius of Perrysburg. He further stated that he has a commercial operator's license issued by the state of New Jersey, and that, although he lived in Ohio, his license had to list a New Jersey address so he could pay the "highway use tax" for the dump truck in New Jersey. Appellant further testified that he moved the dump truck to New Jersey within three weeks of purchasing it because he could not get enough hauling jobs in the Perrysburg area, and that, before the accident occurred, Progressive sent proof of insurance to the New Jersey Bureau of Motor Vehicles so he could obtain a New Jersey license plate for the truck.
 {¶ 34} Modene testified in his deposition that appellant told him the dump truck would be garaged in Perrysburg, and that it would be operated within a 50 mile radius of Perrysburg.
 {¶ 35} Craine testified in her deposition that appellant added a second truck and driver to the policy in July 1997. She also testified that Progressive does not write insurance policies in New Jersey, and that a change of garage from Perrysburg to New Jersey, an area of higher risk, would invoke the "additional premium agreement" in the policy. Craine further stated that, in addition to the principle place of garaging and operation, Progressive's "rating criteria" include the type, age, value and general condition of the vehicle, and the number of drivers.
 {¶ 36} Dincer testified in his deposition[2] that appellant employed him to drive the dump truck approximately one and one-half months before the accident. Dincer also testified that, although appellant's residence was in Ohio, appellant ran a commercial hauling operation, with at least two trucks and a van, from a lot behind the Liberty Diner in Bordentown, New Jersey. Dincer stated that he knew from the dump truck's registration and other papers given to him by appellant that appellant's business address was Trenton, New Jersey.
 {¶ 37} On October 9, 2001, appellant filed a response to Progressive's motion for summary judgment and a cross-motion for summary judgment, which he asserted that, as a matter of law, the policy was "in full force and effect" and Progressive is not entitled to summary judgment. In addition, appellant asserted, based on correspondence he received from Progressive's claims office in Iselin, New Jersey, that Progressive writes insurance policies in New Jersey. Appellant further asserted that, under the terms of the policy, Progressive's only remedy upon discovering that the dump truck was garaged in New Jersey is to increase the premium. Specifically, appellant relied on that section of policy which provides for the payment of an additional premium upon the discovery of any change of information or discovery of an error after an application for insurance is submitted to Progressive. In such cases, the policy provides that Progressive will advise the insured that an additional premium must be paid to avoid cancellation of the policy.
 {¶ 38} In addition to the policy, appellant relied upon his own affidavit and a copy of Progressive's interoffice correspondence relating to the accident investigation. Appellant stated in this affidavit that, before moving the truck to New Jersey, he contacted Modene to ask if the insurance policy would be valid if he moved the truck to New Jersey, and Modene told him the dump truck would be covered so long as appellant did not move his residence to New Jersey. Appellant also stated in the affidavit that Progressive supplied New Jersey authorities with proof of insurance for the dump truck so he could obtain New Jersey license plates.
 {¶ 39} Appellant further stated that, while the dump truck was still in Ohio, he hired another driver to use the truck to do a job for Sylvester Trucking Co. Appellant stated that he believed he could do a better job "supervising" the truck if it was kept in the Toledo area; however, he moved the truck to New Jersey because he had contacts there who could get him more jobs so he could "pay for the truck and the driver."
 {¶ 40} Attached to appellant's affidavit was a copy of Progressive's interoffice correspondence which indicated that Progressive agents were concerned with: (1) determining where the dump truck was operated "from the inception of this policy, 6/6/97"; and (2) finding out whether appellant had any other vehicles covered by policies issued in New Jersey.
 {¶ 41} On October 12, 2001, Progressive filed a memorandum in opposition to appellant's motion for summary judgment, in which it reasserted that the policy was void because appellant misrepresented that the dump truck would be garaged in Ohio. In addition, Progressive argued that the policy was void ab initio because appellant did not disclose on the application that Cafer Dincer, and not appellant, was the dump truck's "regular driver." Progressive attached to its memorandum the affidavit of Brian Kroll, branch manager of Progressive's claims office in Iselin, New Jersey, which Kroll stated that his office in New Jersey is a "satellite" claims office, maintained for the purpose of serving those Progressive policy holders who live in other states, primarily New York, who may be involved in accidents in New Jersey. Kroll further stated that Progressive does not write "any type of commercial vehicle insurance or other type of auto or motor vehicle insurance in the State of New Jersey"
 {¶ 42} On November 2, 2001, a pretrial hearing was held,[3] at which appellant's counsel asked the trial court for permission to file yet another affidavit, apparently to demonstrate that Progressive was aware from the beginning that appellant owned more than one truck. Permission was granted on that limited basis and, on November 14, 2001, appellant filed his last affidavit, in which he stated that Modene told him "it did not make any difference who the driver [of the dump truck] was, so long as [appellant] owned the truck."
 {¶ 43} On January 22, 2002, the trial court filed a judgment entry in which it found that appellant's last affidavit was "outside of the scope" for which the court granted leave to file, and "inexplicably contradicts [appellant's] deposition testimony." Accordingly, the court ordered appellant's last affidavit stricken from the record.
 {¶ 44} In that same judgment entry, the trial court found that a genuine issue of material fact exists as to whether appellant misstated where the dump truck was to be garaged and operated on the insurance application. However, the court further found that appellant "misrepresented on the insurance application that he would be the sole, principle driver of the dump truck." Accordingly, the trial court found that the policy was void ab initio and, as a matter of law, Progressive was entitled to summary judgment and appellant was not entitled to summary judgment. A timely notice of appeal was filed.
 {¶ 45} On appeal, appellant asserts in his fourth assignment of error that Progressive waived its claim that the insurance policy was void because Dincer was driving the truck. In support thereof, appellant relies on case law from jurisdictions other than Ohio, which appear to hold that, once an insurer refuses to pay a claim on specific grounds, and the insured has acted to defend himself on that basis, all other grounds are waived.
 {¶ 46} Similarly, appellant asserts in his sixth assignment of error that the trial court erred by finding that the policy is void because the dump truck was driven by an unlisted driver, since Progressive did not assert such a defense in the pleadings, or by motion. In support thereof, appellant relies on Civ.R. 12(B), which states, in part, that "[e]very defense, in law or in fact to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required * * *."
 {¶ 47} A review of the record demonstrates that Progressive answered appellant's complaint by asserting generally that the insurance contract was void ab initio "as a result of the [appellant's] breach of the policy conditions * * *." The answer also asserts that appellant's insurance application contained fraudulent and/or material misrepresentations, which "are incorporated into the policy by reference, as well as by operation of law."
 {¶ 48} Based on the foregoing, we find that appellant was put on sufficient notice that the veracity of any and all statements made on his insurance application were at issue. In addition, it is undisputed that Progressive's position that the policy was void because the dump truck had additional, unlisted drivers would not have been raised in this case but for information voluntarily supplied by appellant's own affidavit and deposition testimony. Appellant's fourth and sixth assignments of error are not well-taken.
 {¶ 49} Appellant asserts in his seventh assignment of error that the trial court erred by finding that the policy was void due to a change of drivers. Appellant argues that, pursuant to the terms of the policy, Progressive's only remedy upon discovery of circumstances that affects the risk incurred by Progressive is to adjust the premium up or down. In support thereof, appellant relies on the "Additional premium agreement" provisions in the policy, which state, in relevant part:
 {¶ 50} "You acknowledge that the premium for each term of your Policy is determined by information in our possession at the inception date of the Policy period. Any change in this information during the period which would affect the rating of your policy gives us the right to make an additional charge on a pro-rata basis. In addition, you have a duty to inform us of any such change.
 {¶ 51} "* * *
 {¶ 52} "2. If the premium revision results from erroneous or incomplete information supplied by you or on your behalf, we shall:
 {¶ 53} "a. Correct the premium or rate retroactive to the inception date of the policy; and
 {¶ 54} "b. Notify you of the reason for the amount of the change. If you are not willing to pay the additional premium billed, within ten (10) days of our demand for such premium, you may cancel the policy by not paying the additional premium. We will notify you of the date such cancellation becomes effective and compute any return premium based on the correct premium.
 {¶ 55} "3. In the event that we discover that additional premium is due when we adjust a claim under PART II — EXPENSES FOR MEDICAL SERVICES TO INSUREDS or PART III — DAMAGE TO YOUR INSURED AUTO, you agree that such premium may be deducted from the amount of payment otherwise due under such Parts if such payment is to benefit you either directly or indirectly.
 {¶ 56} "Nothing contained in this section will limit our right to void this policy for breach of warranty or misrepresentation of any information by you."
 {¶ 57} Appellant correctly states that the policy provides for the adjustment of premiums in the event that an error is discovered. However, the last paragraph, as quoted above, unambiguously provides that Progressive's remedies in the event of breach of warranty or misrepresentation of information also include the right to void the policy. Accordingly, appellant's seventh assignment of error is not well-taken.
 {¶ 58} Appellant asserts in his third assignment of error that, even if statements made in the application are false, Progressive cannot void the policy on that basis "unless such misrepresentations were material to the risk."
 {¶ 59} The parties agree that, pursuant to Ohio law, if a statement made by an insured constitutes a warranty, "a misstatement of fact voids the policy ab initio. However, if the statement is a representation, a misstatement by the insured will render the policy voidable, if it is fraudulently made and the fact is material to the risk, but it does not void the policy ab initio." Allstate Ins. Co. v.Boggs (1971), 27 Ohio St.2d 216, 218-219. A representation is defined as "a statement made prior to the issuance of the policy which tends to cause the insured to assume the risk," while a warranty is defined as "a statement, description or undertaking by the insured of a material fact either appearing on the face of the policy or in another instrument specifically incorporated in the policy." Id. at 219 (other citations omitted).
 {¶ 60} It is well settled that "[c]ourts do not favor warranties, or forfeitures from the breach thereof, and a statement as to conditions does not constitute a warranty unless the language of the policy, construed strictly against the insurer, requires such an interpretation. The fundamental principle is that inasmuch as policies of insurance are in the language selected by the insurer they are to be construed strictly against the insurer, and liberally in favor of the insured. Butche v.Ohio Cas. Ins. Co. (1962), 174 Ohio St. 144. See 30 Ohio Jurisprudence 2d 225 and 227, Sections 215 and 216. * * * In other words, * * * [i]f it is [the insurer's] purpose to provide that a misstatement by the insured shall render the policy void ab initio, such facts must appear clearly and unambiguously from the terms of the policy." Id.
 {¶ 61} In this case, the paragraph above the signature line on appellant's insurance application contains the following:
 {¶ 62} "I hereby apply to [Progressive] for a policy of insurance as set forth in this application on the basis of the statements contained herein. I agree that such policy shall be null and void if such statement is false, or misleading, or would materially affect acceptance of the risk by [Progressive]. I understand that this application becomes a part of the insurance policy. * * *"
 {¶ 63} In addition, page 1 of the policy states, under the heading "Policy Agreement":
 {¶ 64} "If you pay your premium when due, we agree to insure you, based upon the warranties and representations made by you in your application, subject to all of the terms of the Policy including all applicable endorsements attached to this Policy and shown in the Declarations. The Declarations and your application are a part of this Policy."
 {¶ 65} Based on the foregoing, we find that, even construing the language of the policy most strongly against Progressive, the policy language unambiguously provides that the statements made by appellant in the application were warranties. Accordingly, the trial court did not err by finding that such statements, if false, "could render the policy void ab initio." Appellant's third assignment of error is not well-taken.
 {¶ 66} In his first and second assignments of error, appellant collectively asserts that the trial court erred by granting Progressive's motion for summary judgment because the statements on his application for insurance were true at the time they were made, and therefore do not constitute a breach of warranty that would allow Progressive to void the policy. In his eighth and ninth assignments of error, appellant asserts that the trial court erred by granting Progressive's motion for summary judgment and denying his own motion for summary judgment, respectively. Because the issues raised in these four assignments or error are interrelated, they will be considered together.
 {¶ 67} We note initially that, in reviewing a summary judgment, this court must apply the same standard as the trial court. Lorain Natl.Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 68} As to the issues raised in appellant's first, second, eighth and ninth assignments of error, the trial court made two key determinations. As set forth above, the trial court found that a genuine issue of fact remained as to whether, at the time the insurance application was made, appellant "misstated on his insurance application where the dump truck was to be operated and whether [appellant] informed [Progressive] of his intention to move the dump truck to New Jersey." However, the trial court further found that "[appellant] misrepresented on the insurance application that he would be the sole, principle driver of the dump truck * * * [and], as a result of this misstatement the insurance policy was void ab initio." Accordingly, the trial court granted Progressive's motion for summary and denied appellant's cross-motion for summary judgment.
 {¶ 69} As to the trial court's first determination, a review of the entire record shows that appellant told Modene he would use the dump truck within a 50 mile radius of Perrysburg, Ohio. The record also shows that the dump truck was used for at least one job in Ohio; however, the truck was soon moved to New Jersey where it was involved in the accident that gave rise to this lawsuit.
 {¶ 70} Appellant testified in his deposition that he told Modene he was going to move the dump truck to New Jersey, and that Modene told him the policy would remain in effect, so long as appellant did not actually change his residence to New Jersey. However, Modene testified in his deposition that he had only a "hypothetical conversation" with appellant, in which appellant stated he was "thinking about moving" to New Jersey. Modene also stated that he told appellant to call Progressive's 800 number and report any changes in his residence. In addition, Sandra Craine testified that Progressive does not write commercial insurance policies in New Jersey, and that the dump truck's radius of operation and garaging in Perrysburg were material factors in setting the insurance premium.
 {¶ 71} Upon consideration of the foregoing, we agree with the trial court that a genuine issue of fact remains as to whether appellant listed the correct location and area of operation for the dump truck on the insurance application, and whether Progressive was aware, through Modene, that appellant actually intended to use the dump truck in New Jersey. Accordingly, the trial court did not err by denying both parties' motions for summary judgment on that basis.
 {¶ 72} As to the trial court's second determination, appellant's insurance policy provided coverage for bodily injury and property damage "for which an insured is legally liable because of an accident." An "insured" is defined in Part I of the policy as"
 {¶ 73} "1. You
 {¶ 74} "* * *
 {¶ 75} "3. Any other person driving your insured auto with your permission and within the scope of that permission; * * *."
 {¶ 76} Based on the foregoing, we conclude that the policy at least considers the possibility that the dump truck may be driven by someone other than appellant. In fact, the record shows that Progressive did not seek to void the policy on the basis of an unlisted driver until appellant revealed that he employed Dincer and other individuals to operate the dump truck on a regular basis. However, the insurance application signed by appellant required him to "list all drivers," and Craine testified in her deposition that Progressive's "rating criteria" was based, in part, on the number of drivers listed on the insurance application. The relevant question, therefore, is not whether appellant ever intended to allow anyone else to drive the dump truck, but whether, at the time he applied for insurance through Progressive, appellant had already employed individuals other than himself to drive the dump truck on a regular basis.
 {¶ 77} It is undisputed that appellant listed himself as the only driver on the insurance application. Appellant testified in his deposition that, at the time he purchased the dump truck, he also owned a 1992 Volvo "stake truck" which he used to haul freight for Federal Express, he employed other drivers to drive trucks for him from time to time, and an individual other than himself had driven the dump truck during the brief time it was in Ohio. Cafer Dincer testified in his deposition that he was hired by appellant to drive the dump truck in New Jersey approximately six weeks before the accident occurred. The record also shows that when appellant purchased an additional truck in July 1997, he listed his brother, Turgot Ozbay, as the driver on the insurance application. The additional truck was added to appellant's existing Progressive policy. The record contains no evidence that appellant hired anyone to operate the dump truck before he purchased it in Georgia in June 1997, and drove it back to Perrysburg.
 {¶ 78} This court has reviewed the entire record of proceedings that was before the trial court and, on consideration thereof, we find that a genuine issue of material fact remains as to whether, at the time he filled out the application for insurance on the dump truck, appellant had already employed individuals other than himself to drive the dump truck on a regular basis. Accordingly, the trial court erred by granting Progressive's motion for summary judgment based in its finding that appellant "misrepresented on the insurance application that he would be the sole, principle driver of the dump truck." Appellant's first, second, eighth and ninth assignments of error are well-taken.
 {¶ 79} Based on our determinations as set forth above, we find that appellant's fifth assignment of error is rendered moot and is therefore not well-taken.
 {¶ 80} The judgment of the Wood County Court of Common Pleas is hereby affirmed in part and reversed in part. This case is remanded to the trial court for further proceedings consistent with this decision. Court costs of these proceedings are assessed equally to appellant and appellee.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
Peter M. Handwork, P.J., Melvin L. Resnick, J., and Richard W.Knepper, J., concur.
[1] The complaint was originally filed in October, 1998, in the Wood County Court of Common Pleas; however, the case was dismissed, without prejudice, for appellant's failure to prosecute. The action was then refiled in the Lucas County Court of Common Pleas on November 8, 2000. Thereafter, Progressive filed a motion to transfer venue back to Wood County, which the trial court granted.
[2] Cafer Dincer's deposition was taken on September 14, 2000, in connection with a lawsuit filed by Dincer against Progressive in New Jersey, and subsequently made part of the record in this action.
[3] The record on appeal contains only a partial transcript of the hearing.